**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) ) ) | |
| | ) | Case No. 18 C 6770 |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Honorable District Judge |
| CLAYCOMO RELEASING, INC, an Illinois corporation, | ) ) ) | |
| *Defendant.* | ) ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund" and with the Pension Fund collectively referred to as the "Funds"), and Arthur H. Bunte, Jr., one of the Funds' present trustees, allege as follows:

## JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq.*, and is a suit to recover employer contributions owed to the Funds by Defendant in accordance with applicable collective bargaining, participation, and trust fund agreements.

- 1 -

2.      This Court has jurisdiction over this action under sections 502(e) and(f) of ERISA, 29 U.S.C. §§ 1132(e) and (f).

3.      Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Funds are administered at their principal place of business in Rosemont, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Funds' Trust Agreements which designate this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

4.      The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), with its principal and exclusive office located at 9377 West Higgins Road in Rosemont, Illinois.

5.      The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6.      The Health Fund is a multiemployer employee welfare benefit plan and trust, with its principal and exclusive office located at 9377 West Higgins Road in Rosemont, Illinois.

7.      The Health Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with

local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Health Fund and paying the administrative expenses of the Health Fund.

8.      Plaintiff Arthur H. Bunte, Jr. is a present trustee and fiduciary of the Funds within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Funds within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Funds at 9377 West Higgins Road, Rosemont, Illinois.

9.      Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), the Funds as well as the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Funds, their participants and beneficiaries for the purpose of collecting unpaid contributions.

10.      Defendant Claycomo Releasing, Inc. ("Claycomo") is a corporation organized under the laws of the State of Illinois. Claycomo is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

11.      On or about May 3, 2015, Claycomo became a participating employer in the Funds.

## BACKGROUND INFORMATION

12.     Local Union No. 41 ("Local 41") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of Claycomo, and employees of other employers in industries affecting interstate commerce.

13.     During all relevant times since May 3, 2015, Claycomo and Local 41 were parties to certain agreements pursuant to which Claycomo was required to make contributions to the Funds on behalf of certain of its employees.

### National Master Agreements

14.     Effective May 3, 2015, Claycomo was a party to the National Master Automobile Transporters Agreement for the period of June 1, 2011 through August 31, 2015 (the "2011-15 NATA").

15.     Claycomo is a party to the National Master Automobile Transporters Agreement for the period of September 1, 2015 through May 31, 2021 (the "2015-21 NATA and collectively with the 2011-15 NATA the "NATAs").

16.     Article 2, Section 6 of the NATAs provides:

> The Employer and the Union mutually agree that there may be added to an Area Supplemental Agreement any Article governing any phase of employment which they mutually deem necessary provided said change and/or Rider is signed by both parties or attached to this Agreement as a Rider or Supplement, and provide further, that such Rider or Supplement is approved by the applicable Area Joint Arbitration Committee, unless it affects provisions of the same National Master Agreement at which time same must first be approved by the National Joint Arbitration Committee. All negotiated Riders must become a part of the appropriate Area Supplemental Agreement and be attached thereto.

**Supplemental Agreements**

17.     Effective May 3, 2015, Claycomo was a party to the Central and Southern Area Supplemental Agreement to the 2011-15 NATA for the period of June 1, 2011 through August 31, 2015 (the "2011-15 Supplemental Agreement").

18.     Article 53 of the 2011-15 Supplemental Agreement provides in part:

> Effective August 1, 2011, the Employer shall contribute to the [Health Fund] the sum of two hundred seventy-seven dollars and seventy cents ($277.70) per week. However, if a participant works only one (1) day in a week, the Employer is only obligated to pay thirty four dollars ($34.00) for that week.

> * * *

> (b)     All contractual provisions relating to health & welfare and pension shall be provided in the respective Supplemental Agreements.

> * * *

> By the execution of this Agreement, the Employer authorizes the Employers' Association to enter into appropriate trust agreements necessary for the administration of such fund, and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

> * * *

19.     Article 54 of the 2011-15 Supplemental Agreement provides in part:

> (a)     Beginning August 1, 2011, the Employer shall contribute to a Pension Fund the sum of sixty-eight dollars and forty cents ($68.40) per day for each day worked, to a maximum  of five (5) days per week or three hundred forty-two dollars ($342.00).

> * * *

> (d)     All contractual provisions relating to health & welfare and pension shall be provided in the respective Supplemental Agreements.

By the execution of this Agreement, the Employer authorizes the Employers' Association to enter into appropriate trust agreements necessary for the administration of such fund, and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

\* \* \*

Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part time under the provisions of this Agreement, including weeks where work is performed for the Employer but not under the provisions of this Agreement, and although contributions may be made for those weeks into some other Pension Fund. Employees who work either temporarily or in cases of emergency under the terms of this Agreement shall not be covered by the provisions of this paragraph.

\* \* \*

20.     Article 54 of the 2011-15 Supplemental Agreement also provides in part:

The Employer shall make contributions into the applicable Pension Fund in the maximum amount of sixty-eight dollars and forty cents ($68.40) per day effective August 1, 2011, for casual or extra employees. On August 1, 2012, August 1, 2013, August 1, 2014 and August 1, 2015, this daily contribution rate shall be increased in the amount of the 8-hour equivalent of the hourly increases, if any, allocated to pension under Article 54(e), above, on each such date. The Pension Fund contribution shall not be required if pension contributions established by the appropriate Supplemental Agreement have been paid on his behalf.

21.     Claycomo is a party to the Central and Southern Area Supplemental Agreement to the 2015-2021 NATA for the period of September 1, 2015 through May 31, 2021 (the "2015-21 Supplemental Agreement and collectively with the 2011-15 Supplemental Agreement the "Supplemental Agreements").

22.     Article 53 of the 2015-21 Supplemental Agreement provides in part:

Effective August 1, 2016, the Employer shall contribute to the [Health Fund] the sum of three hundred seventy-four dollars and seventy

cents ($374.70) per week. However, if a participant works only two days or less in a week, the Employer is only obligated to pay thirty four dollars ($34.00) for that week.

Weekly contributions thereafter will be made to maintain C-6/Teamcare coverage as follows:

Effective August 1, 2017, an amount not to exceed $406.65 per week;
Effective August 1, 2018, an amount not to exceed $411.50 per week;
Effective August 1, 2019, the published weekly rate necessary to maintain benefits;
Effective August 1, 2020, the published weekly rate necessary to maintain benefits.

* * *

(b)    All contractual provisions relating to health & welfare and pension shall be provided in the respective Supplemental Agreements.

* * *

By the execution of this Agreement, the Employer authorizes the Employers' Association to enter into appropriate trust agreements necessary for the administration of such fund, and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

* * *

23.    Article 54 of the 2015-21 Supplemental Agreement provides in part:

Beginning August 1, 2016, the Employer shall contribute to a Pension Fund the sum of sixty-eight dollars and forty cents ($68.40) per day for each day worked, to a maximum of five (5) days per week or three hundred forty-two dollars ($342.00).

* * *

(d)    All contractual provisions relating to health & welfare and pension shall be provided in the respective Supplemental Agreements.

By the execution of this Agreement, the Employer authorizes the Employers' Association to enter into appropriate trust agreements

necessary for the administration of such fund, and to designate the Employer Trustees under such Agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

\* \* \*

Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part time under the provisions of this Agreement, including weeks where work is performed for the Employer but not under the provisions of this Agreement, and although contributions may be made for those weeks into some other Pension Fund. Employees who work either temporarily or in cases of emergency under the terms of this Agreement shall not be covered by the provisions of this paragraph.

\* \* \*

24.     Article 54 of the 2015-21 Supplemental Agreement also provides in part:

The Employer shall make contributions into the applicable Pension Fund in the maximum amount of sixty-eight dollars and forty cents ($68.40) per day effective August 1, 2016, for casual or extra employees. On August 1, 2017, August 1, 2018, August 1, 2019 and August 1, 2020, this daily contribution rate shall be increased in the amount of the 8-hour equivalent of the hourly increases, if any, allocated to pension under Article 54(e), above, on each such date. The Pension Fund contribution shall not be required if pension contributions established by the appropriate Supplemental Agreement have been paid on his behalf.

**Participation Agreement**

25.     Claycomo and Local 41 are parties to a Participation Agreement executed on or about March 15, 2016 (the "Participation Agreement"). (A true and accurate copy of the Participation Agreement is attached hereto as Exhibit 1.)

## **Trust Agreements and Plan Provisions**

26.     Claycomo agreed to be bound by the terms of the Pension Fund Trust Agreement and the Health Fund Trust Agreement (collectively the "Trust Agreements"), and all rules and regulations promulgated by the Trustees under said Trust Agreements.

27.     The first paragraph of Article III, Section 1 of the Funds' Trust Agreements provides, in part:

> Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority….

28.     The fourth paragraph of Article III, Section 1 of the Trust Agreements provides, in part:

> Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:
>
> > Contracts Department
> > Central States, Southeast and
> > Southwest Areas Pension Fund
> > 9377 West Higgins Road
> > Rosemont, Illinois 60018-4938
>
> Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement, this Agreement, a participation agreement and/or any other written agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the disclosed collective bargaining agreement, the disclosed participation agreement, this Agreement or other disclosed written agreement which shall all be enforceable for their stated

duration without regard to any undisclosed agreement. Except as provided in this Section, Section 7(b) of Article III and Section 20 of Article IV, the obligation to make such Employer Contributions shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives from the Employer (at the address specified above sent by certified mail with return receipt requested: a) a collective bargaining agreement signed by both the Employer and the Union that eliminates the duty to contribute to the Fund or b) written notification that accurately indicates that negotiations with the Union have reached impasse after collective bargaining agreement termination and the Employer has lawfully implemented a proposal to withdraw from the Fund. Such Employer Contributions shall not be required during a strike or lockout, unless the Union and Employer mutually agree otherwise in writing.

29.     Article III, Section 5 of the Trust Agreements provides in part:

Production of Records. Each employer shall promptly furnish to the Trustees, upon reasonable demand, the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee ... and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employers place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust...

30.     Article III, Section 7(a) of the Trust Agreements provides:

An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement or participation agreement or any other written agreement accepted by the Fund (including any extension of a collective bargaining agreement through an evergreen clause or through an extension agreement of eighteen months or less) on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement. The following provisions contained in any agreement shall not be enforceable against the Fund (regardless of when the agreement was entered into): a) a provision contained in either a collective bargaining agreement or participation agreement or any agreement entered into by an Employer and Union subsequent to the collective bargaining agreement that purports to authorize the elimination or reduction of the duty to contribute to the Fund before the termination of the collective bargaining agreement

and/or participation agreement and/or other agreement under its duration provision (including any extension through an evergreen clause) and b) a provision of an agreement that purports to eliminate or reduce the duty to contribute to the Fund contained in an agreement that extends a collective bargaining agreement for a period of eighteen months or less from its termination.

31.     Article III, Section 8 of the Trust Agreements provides in part:

The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the Fund's exclusive remedy in the event of a violation of the Fund's adverse selection rule. The Fund shall also be entitled to collect additional contributions from an Employer that violates the Fund's adverse selection rule in an amount equal to the contributions that would have been paid to the Fund but for the adverse selection rule violation.

32.     Article IV, Section 20 of the Funds' Trust Agreement provides:

The Trustees are authorized to reject any collective bargaining agreement, participation agreement and/or terminate the participation of an Employer (and all Employer Contributions from the Employer) whenever they determine that the agreement is unlawful and/or inconsistent with any rule or requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make Employer Contributions to the Trust Fund at different contribution rates for different groups of the Employer's bargaining unit employees) and/or they determine that continued participation by the Employer is not in the best interest of the Fund. Any such rejection and/or termination by the Trustees of a collective bargaining agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the Employer and all Employees of the Employer from further participation in the Fund on and after such effective date.

33.     Article XIV, Section 4 of the Pension Fund Trust Agreement provides:

Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an

Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). ... Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

34. The Health Fund Trust Agreement contains identical language to the Pension Fund Trust Agreement language alleged in paragraph 33 above except the Health Fund Trust Agreement does not include the following words/phrases relating to withdrawal liability the parenthetical phrases "(other than withdrawal liability)" in the third and fifth sentences.

35. Article XIV, Section 12 of the Pension Fund Trust Agreement and Article XI, Section 11 of the Health Fund Trust Agreement provide:

An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required

to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

**Casual Agreement between Cassens and Local 41**

36.     Cassens Transport, Inc. ("Cassens") is a corporation organized under the laws of the State of Illinois.

37.     Claycomo is a wholly owned subsidiary of Cassens.

38.     Cassens and Claycomo are trades or businesses under common control within the meaning of ERISA.

39.     Cassens was also bound by the 2011-15 NATA and the 2011-15 Supplemental Agreement and is currently bound by the 2015-21 NATA and the 2015-21 Supplemental Agreement.

40.     At all times from November 2015 through June 2018, there was a group of Cassens' employees covered by the NATAs and the Supplemental Agreements who were represented by Local 41.

41.     Cassens and Local 41 executed a Casual Agreement in November 2015 (the "Casual Agreement"). (A true and accurate copy of the Casual Agreement is attached as Exhibit 2.)

42.     Claycomo is not a party identified in nor is it a signatory to the Casual Agreement.

43.     The Casual Agreement was not submitted, approved, and attached to the Supplemental Agreements to which Cassens was bound or to the Supplemental Agreements to which Claycomo was bound.

44.     On October 25, 2017, the Funds for the first time received a copy the Casual Agreement.

## **STATUTORY AUTHORITY**

45.    Section 515 of ERISA, 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

46.    Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A)    the unpaid contributions,

(B)    interest on the unpaid contributions,

(C)    an amount equal to the greater of--

(i)    interest on the unpaid contributions, or

(ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## COUNT I –
## <u>FUNDS' AUDIT CLAIM</u>

47.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1-46 as and for paragraph 47 of Count I of this Complaint.

48.     The Funds rely upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Funds bill the employers for contributions.

49.     Under this self-reporting system, participating employers initially establish a base group of employees for whom contributions are due. Thereafter, the employer is required to notify the Funds on a monthly basis of any changes in the employment status of individuals covered by the collective bargaining agreement (e.g., layoffs, new hires, terminations, etc.). The Funds rely upon these reports submitted by employers to prepare a monthly contribution bill that is sent to the employer. If no changes are reported by the employer, the Funds assume that the same employees are still working and bill the employer accordingly.

50.     During the period of May 3, 2015 through August 25, 2018, Claycomo reported the work history of its covered employees to the Funds.

51.     Pursuant to the Participation Agreement and the Trust Agreements, the Funds are permitted to audit work history records of participating employers in order to verify the accuracy and completeness of the reported employee work history submitted as part of the self-reporting system.

52.     The Funds audited Claycomo's records to verify the accuracy and completeness of employee work history reported to the Funds by Claycomo during the period of May 3, 2015 through December 23, 2017 (the "Audit").

53.     The Audit revealed that Claycomo had failed to accurately report the work history of its covered employees to the Funds during the period of May 3, 2015 through December 23, 2017 (the "Audit Period").

54.     The Audit revealed that Claycomo breached the provisions of ERISA, the NATAs, the Supplemental Agreements, the Participation Agreement, and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds for the Audit Period. The Funds believe Claycomo continued to fail to pay all contributions owed to the Funds for the period after December 23, 2017.

55.     Claycomo owes the Health Fund $2,877.60 for unpaid contributions (not including interest) for the Audit Period and additional amounts that are not known with specificity for the period after December 23, 2017, as a result of the conduct set forth in paragraph 54.

56.     Claycomo owes the Pension Fund $889,627.20 for unpaid contributions (not including interest) for the Audit Period and additional amounts that are not known with specificity for the period after December 23, 2017, as a result of the conduct set forth in paragraph 54.

57.     During the Audit Period and the period after December 23, 2017, Claycomo did not report the work history to and did not remit contributions to the Pension Fund on employees Claycomo classified as "casual employees" unless the employee worked over 1,000 hours in a 12 month period.

58.     Almost all of the contributions alleged by the Pension Fund in paragraph 56 relate to employees classified by Claycomo as casual employees. Under the Supplemental Agreements, the Participation Agreement, the Pension Fund Trust Agreement, and the Pension Fund rules, Claycomo had a duty from May 3, 2015 through the present to remit contributions to the Pension Fund on behalf of casual employees from their initial hour of work for Claycomo.

59.     The Casual Agreement does not limit the duty of Claycomo to contribute on its casual employees to only those who worked over 1,000 hours in a 12 month period because Claycomo is not a party to the Casual Agreement and the Casual Agreement is unenforceable under the Supplemental Agreements, the Participation Agreement, the Trust Agreements, the Pension Fund's rules, and ERISA.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Defendant in favor of the Funds, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreements for:

    (i)      the unpaid contributions owed to the Funds by Defendant;

    (ii)     interest on the unpaid contributions computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

    (iii)    an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

    (iv)     attorneys' fees and costs; and

(v)     audit fees and costs;

(b)     Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)     For such further or different relief as this Court may deem proper and just.

**COUNT II -**
**FUNDS' CLAIM UNDER THE ADVERSE SELECTION RULE VIOLATION**

60.     Plaintiffs hereby reallege and incorporate by reference paragraphs 1-15, 17-27, 29, 31-35, 44-46, 53, and 57 as and for paragraph 60 of Count II of this Complaint.

61.     Pursuant to paragraph No. 12 of the Participation Agreement, Claycomo agreed that it "is aware of the Fun[d]'s adverse selection rules (including Special Bulletin 90-7) and agrees that while this Agreement remains in effect, it will not enter into any agreement or engage in any practice that violates the adverse selection rule."

62.     Pursuant to Article III, Section 8 of the Trust Agreements, the Funds are entitled to "collect additional Employer Contributions from an Employer that violates the Fund's [adverse selection rule] in an amount equal to the Employer Contributions that would have been paid to the Fund but for the adverse selection rule violation."

63.     When Claycomo began participation in the Funds in May 2015, it initially reported and remitted contributions on 87 employees to the Funds. Between May 2015 and June 30, 2018 Claycomo did not report or contribute to the Funds on behalf of any employees hired after May 2015 and the number of employees reported to the Funds by Claycomo during that period declined to 66 employees.

64.     Under the Supplemental Agreements, contributions are not owed to the Health Fund on casual employees and Claycomo did not contribute to the Pension Fund on behalf of a single casual employee to the Pension Fund based upon its assertion that the Casual Agreement limited its obligation to contribute on casuals to those who worked over 1,000 hours in a 12 month period and not one of Claycomo's casual employees crossed that threshold.

65.     The transfer or assignment of work previously performed by covered employees to non-covered casual employees by Claycomo violated the Health Fund's adverse selection rule and the Health Fund is entitled to additional contributions from Claycomo based upon the work performed by the casual employees.

66.     In the event the Court determines that Claycomo does not owe contributions on behalf of a casual employee until he/she had worked 1,000 hours in a 12 month period, Claycomo still owes additional contributions to the Pension Fund because the transfer or assignment of work from work previously performed by covered employees to non-covered casual employees by Claycomo nonetheless violates the adverse selection rule and the Pension Fund is entitled to additional contributions from Claycomo based upon the work performed by casual employees.

67.     Claycomo breached the provisions of ERISA, NATAs, the Supplemental Agreements, the Participation Agreement, and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds due to Claycomo's violation of the adverse selection rule.

68.     Claycomo owes the Funds additional amounts for unpaid contributions, which cannot be calculated with specificity at this time due to its violation of the adverse selection rule but will be determined in the course of discovery.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Defendant in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreement for:

        (i)     all unpaid contributions owed to the Funds by Claycomo;

        (ii)     interest on the unpaid contributions, computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

        (iii)     an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

        (iv)     attorneys' fees and costs; and

        (v)     audit fees and costs;

(b)     Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)     Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

_/s/Anthony E. Napoli_____
Anthony E. Napoli
Attorney for Plaintiffs
Central States Funds
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018-4938
(847) 939-2469
ARDC # 06210910
October 8, 2018                          tnapoli@centralstates.org